IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | |
| v. : | **CRIMINAL ACTION NO. 10-81** |
| : | |
| **TYRONE FIELDS** : | |
| : | |

## MEMORANDUM

Tyrone Fields (inmate number 65168-066), a forty-one year-old inmate who has served 144 months of a 180-month sentence, has filed a motion for compassionate release pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A). Mr. Fields is currently scheduled for early release to a halfway house on March 15, 2022, as the result of his "exemplary compliance with institutional disciplinary regulations" under 18 U.S.C. § 3624.[1]

On September 2, 2021, Mr. Fields filed a Motion Requesting Judicial Recommendation Pursuant to 18 U.S.C. § 3621(b)(4)(B).[2] This motion alleged a failure of the Bureau of Prisons ("BOP") to schedule Mr. Fields's early release due to two unresolved criminal cases that appeared on Mr. Fields's BOP background check: one apparently arising in 2000 and one apparently arising in 2009.[3] Mr. Fields's release date has now been scheduled, so this motion appears to be moot.[4]

---

[1] Cumulative Traverse Resp. [Doc. No. 146] at 5.

[2] It appears that Mr. Fields initially attempted to mail this motion on June 15, 2021, but for reasons that are not apparent the Court did not receive it. *See* Mot. Req. Judicial Recommendation [Doc. No. 140] at 1.

[3] *See* Mot. Req. Judicial Recommendation [Doc. No. 140] at 2–5, 9.

[4] The 2000 and 2009 charges were not part of the Presentence Investigation Report, and it is unclear whether the appearance of these charges on Mr. Fields's background check resulted from an error in the BOP's systems. *See* Government's Resp. Opp'n [Doc. No. 144] at 2. In Mr. Fields's Cumulative Traverse Response [Doc. No. 146] he confirms that his release date has been scheduled. Cumulative Traverse Resp. [Doc. No. 146] at 5.

This motion also asks the Court, in the alternative, to enter a recommendation pursuant to 18 U.S.C. § 3621(b)(4)(B) to accelerate Mr. Fields' placement in a Federal Reentry Center. The Court notes that any recommendation provided

On October 8, 2021, Mr. Fields filed an Emergency Request for Compassionate Release. This Compassionate Release motion asserted that his imminent release to a halfway house and ongoing child custody proceedings surrounding the care of his twelve-year-old daughter were "extraordinary and compelling" reasons supporting a modification of his sentence.[5]

The government opposes both of Mr. Fields's motions.[6] Having carefully reviewed the parties' submissions and the available record, the Court will grant Mr. Fields's Emergency Request for Compassionate Release and dismiss Mr. Fields's Motion Requesting Judicial Recommendation as moot.

## I. BACKGROUND

The background of Mr. Fields's case was extensively discussed by this Court in its denial of an earlier motion for compassionate release based on the COVID-19 pandemic. In summary:

> In March of 2009, Philadelphia police officers responded to a call made by [Mr. Fields's] girlfriend, who testified that "she believed Fields was drunk and was planning 'to open the door [to their residence] with [a] butter knife'" after she had locked him out following an argument. The officers found Fields tampering with the lock with a butter knife, and when asked to put the knife down, he put it up his sleeve. One officer put Fields in a "control hold and the knife fell to the ground." Maintaining the hold, the officer frisked Fields for other weapons and found a semiautomatic pistol loaded with ten rounds of ammunition. The officers discovered that Fields did not have a permit for the firearm and he was subsequently arrested. In May 2011, Fields was convicted by a jury on one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) and § 924(e).
>
> Fields had three prior felony drug convictions for possessing with the intent to distribute cocaine base ("crack"). As a result, Fields was subject to an armed career criminal enhancement at sentencing. On February 8, 2012, the Court

---

under § 3621(b)(4) would have "no binding effect on the authority of the Bureau" to change Mr. Fields's place of imprisonment. *See* 18 U.S.C. § 3621(b).

[5] *See* Emergency Req. Compassionate Release [Doc. No. 143].

[6] *See* Government's Resp. Opp'n [Doc. No. 144].

2

sentenced Fields to 180-months of imprisonment. The Third Circuit affirmed, and Fields is currently serving his sentence at FCI Allenwood Low.[7]

On June 8, 2020, Mr. Fields filed a motion for compassionate release, asserting that he suffered from certain medical conditions that increased his risk of a severe infection from COVID-19, including chronic kidney disease and hypertension.[8] The Court denied the motion without prejudice on December 18, 2020, finding that it did "not present an extraordinary and compelling reason to warrant compassionate release," in large part because Mr. Fields's "medical records [did] not support [his] assertions and he [had] not been diagnosed with either [chronic kidney disease or hypertension]."[9]

On July 26, 2021, Mr. Fields received a notice from the Philadelphia Court of Common Pleas, Family Division – Juvenile Court (the "Juvenile Court") that his twelve-year-old daughter,[10] here referred to as "T.F.," had been placed in protective custody and removed from her mother's home following allegations of physical, verbal, and sexual abuse at the hands of her mother and her mother's boyfriend.[11] On investigation, the Philadelphia Department of Human Services ("DHS") learned certain supporting details and attempted to initiate a "Safety Plan" that placed T.F. with one of her maternal great-grandmothers.[12] However, this placement failed,[13] and

---

[7] Order Den. Mot. Compassionate Release [Doc. No. 133] at 1–2 (quotations omitted).

[8] *See* Mot. Compassionate Release [Doc. No. 125].

[9] *See* Order Den. Mot. Compassionate Release [Doc. No. 133] at 10–20.

[10] While the filings of the parties refer to T.F. as eleven years old, the Court notes that her twelfth birthday was in October, shortly after the government's response was filed.

[11] Emergency Req. Compassionate Release [Doc. No. 143] at Ex. 1, Ex. 2.

[12] Emergency Req. Compassionate Release [Doc. No. 143] at 14–15.

[13] The DHS notice states that the identified great-grandmother refused to retrieve T.F. and her sister from the mother's home. When DHS transported the children to the great-grandmother's home, they learned that an unidentified person lived in the residence who refused to provide the information for DHS to conduct necessary safety clearances. Emergency Req. Compassionate Release [Doc. No. 143] at 15.

T.F. "was placed in foster care through A Second Chance, Inc."[14] Based partly on the fact that "[Mr. Fields] is incarcerated," DHS recommended that T.F. "be committed to the [custody of the] the City of Philadelphia Department of Human Services."[15] The Juvenile Court then appointed counsel to represent Mr. Fields.[16] On August 12, 2021, Mr. Fields received a letter from the assigned case manager notifying him that a court hearing in the custody matter had been held on August 5, 2021, and that a case meeting was scheduled for September 8, 2021.[17] The attorney assigned to Mr. Fields appeared at each court proceeding.[18]

During this time, Mr. Fields seems to have been working diligently to secure his release to a halfway house. On September 2, 2021, Mr. Fields filed the Motion Requesting Judicial Recommendation, attaching evidence that the BOP had sent repeated requests to the Philadelphia District Attorney's Office seeking details about unidentified arrests from 2000 and 2009 that were appearing on Mr. Fields's background check.[19]

On September 9, 2021, Mr. Fields received a letter (apparently mailed on September 2, 2021) notifying him that another court hearing in the custody matter had been held on August 31, 2021, belatedly reminding him of the meeting scheduled for September 8, 2021, and informing him that a "contested adjudicatory hearing" was scheduled for November 1, 2021.[20] On receipt of this notice, Mr. Fields immediately filed a request for compassionate release based

---

[14] Emergency Req. Compassionate Release [Doc. No. 143] at 15. T.F.'s sister, S.M., was placed in a separate foster care facility. *Id.*

[15] Emergency Req. Compassionate Release [Doc. No. 143] at 16.

[16] Emergency Req. Compassionate Release [Doc. No. 143] at 19.

[17] Emergency Req. Compassionate Release [Doc. No. 143] at 24.

[18] Emergency Req. Compassionate Release [Doc. No. 143] at 27, 29.

[19] *See* Mot. Req. Judicial Recommendation [Doc. No. 140].

[20] Emergency Req. Compassionate Release [Doc. No. 143] at 26, 29.

4

on the ongoing custody proceedings.[21] This request was denied on September 24, 2021, and Mr. Fields shortly thereafter filed the present motion seeking compassionate release from this Court.[22] The government responded to both of Mr. Fields's motions on October 8, 2021, the day that the motion for compassionate release was received by the Clerk of Court and docketed, and the Court then appointed counsel to represent Mr. Fields in connection with the compassionate release motion.[23]

## II.     LEGAL STANDARD

"A court generally may not correct or modify a prison sentence once it has been imposed, unless permitted by statute or by Federal Rule of Criminal Procedure 35."[24] One statute that permits such modifications is 18 U.S.C. § 3582 (c)(1)(A)(i), which, as amended by the First Step Act of 2018, "allow[s] prisoners the right to file their own motions for a sentence reduction if they first exhaust the statute's procedures for initially making a request to the warden to file a motion on their behalf."[25] Once a defendant has satisfied the exhaustion requirement, the court may reduce a term of imprisonment based on a finding that "the sentence reduction is (1) warranted by 'extraordinary and compelling reasons'; (2) 'consistent with applicable policy statements issued by the Sentencing Commission';[26] and (3) supported by the traditional

---

[21] Emergency Req. Compassionate Release [Doc. No. 143] at Ex. 1.

[22] Emergency Req. Compassionate Release [Doc. No. 143] at Ex. 2.

[23] *See* Order of Oct. 13, 2021 [Doc. No. 145].

[24] *United States v. Van Sickle*, No. 18-0250, 2020 WL 2219496, at *3 (W.D. Wash. May 7, 2020) (citing *United States v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003)).

[25] *United States v. Hill*, No. 19-00038, 2020 WL 2542725, at *1 (D. Conn. May 19, 2020) (citing *United States v. Almontes*, No. 05-58, 2020 WL 1812713, at *1 (D. Conn. April 9, 2020)).

[26] While any sentence reductions under § 3582 (c)(1)(A) must be "consistent with applicable policy statements issued by the Sentencing Commission," the existing policy statement issued by the Sentencing Commission is "not applicable—and not binding—for courts considering prisoner-initiated motions." *United States v. Andrews*, 12 F.4th 255, 259 (3d Cir. 2021); 18 U.S.C. § 3582 (c)(1)(A).

Nevertheless, District Courts may "consult[] . . . the [Sentencing Commission's] policy statement to form a working definition of 'extraordinary and compelling reasons.'" *Andrews*, 12 F.4th at 260.

sentencing factors under 18 U.S.C. § 3553(a), to the extent they are applicable."[27] The defendant bears the burden of showing that relief is warranted.[28]

### III. DISCUSSION

#### A. Exhaustion of Administrative Remedies

Under 18 U.S.C. § 3582, as modified by the First Step Act of 2018, a prisoner may seek compassionate release either (1) "upon motion of the Director of the Bureau of Prisons;" or (2) upon motion of the defendant, after (a) "the defendant has fully exhausted all administrative rights to appeal a failure of the BOP to bring a motion on the defendant's behalf;" or (b) "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, *whichever is earlier*."[29] The Third Circuit has mandated "strict compliance with § 3582(c)(1)(A)'s exhaustion requirement."[30] Mr. Fields filed the motion less than 30 days after his initial request to the warden of FCI Allenwood Low on September 9, 2021,[31] and did not appeal through the administrative processes within the BOP from the denial issued on September 24, 2021.[32]

---

[27] *Andrews*, 12 F.4th at 258 (quoting 18 U.S.C. § 3582(c)(1)(A)).

[28] *See United States v. Sellers*, No. 10-434, 2020 WL 1972862, at *1 (D.N.J. Apr. 24, 2020); *United States v. Resnick*, No. 14-810, 2020 WL 1651508, at *3 (S.D.N.Y. Apr. 2, 2020) (citing *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992); *United States v. Clarke*, No. 09-705, 2010 WL 4449443, at *1 (S.D.N.Y. Oct. 29, 2010)).

[29] 18 U.S.C. § 3582(c)(1)(A) (emphasis added).

[30] *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

[31] As a general matter, filings by *pro se* prisoners are deemed to have been filed "on the date the *pro se* prisoner delivers the notice to prison authorities for mailing." *Houston v. Lack*, 487 U.S. 266, 275 (1988). Here, there is some ambiguity as to the date on which the motion was mailed. The included "certificate of service" certifies that the motion was filed on the 5th day "of *September*, 2021." Emergency Req. Compassionate Release [Doc. No. 143] at 5 (emphasis added). This is presumably a typographical error, since the text of the motion and the exhibits thereto make extensive reference to events that happened after that date but shortly before *October* 5, 2021. The envelope containing the filing was marked as processed by the mailroom at FCI Allenwood on October 6, 2021, and the filing was received by the Clerk of the Court on October 8, 2021. *See* Emergency Req. Compassionate Release [Doc. No. 143] at 38–39. Here it is irrelevant whether the motion for compassionate release is treated as filed on October 5, 6, or 8, as each date falls within the 30-day window for administrative exhaustion, which runs from the date on which the warden of FCI Allenwood Low received Mr. Fields's request for modification: September 9, 2021.

[32] *See* Emergency Req. Compassionate Release [Doc. No. 143] at Ex. 1, Ex. 2. The warden's denial described the appeal process. *See id.* at Ex. 2, p.2 ("If you are not satisfied with this response, you may appeal through the Bureau

As the government has not asserted failure to exhaust as an affirmative defense, it is forfeited. The administrative exhaustion requirement of § 3582(c)(1)(A) "is mandatory, but has not been held to be jurisdictional in nature;" instead, it is properly categorized as a "claim-processing rule."[33] The Supreme Court has "stressed the distinction between jurisdictional prescriptions and nonjurisdictional claim-processing rules."[34] "Courts must raise jurisdictional defects on their own initiative and may not overlook them even if the parties forfeit or waive challenges to them."[35] While a mandatory claim-processing rule "must be enforce[d] if a party 'properly raises it,' . . . an objection based on a mandatory claim-processing rule may be forfeited 'if the party asserting the rule waits too long to raise the point.'"[36] Such "mandatory claim-processing rules bind the courts only when properly asserted and not forfeited."[37] The § 3582(c)(1)(A) exhaustion requirement falls into this category; the government has failed to raise the failure to exhaust as an affirmative defense, and the Court will address the merits of the motion for compassionate release.[38] The Court must determine whether the sentence reduction is

---

of Prisons, Administrative Remedy Process by obtaining an Informal Resolution form through your Correctional Counselor."); *see also* 28 C.F.R. § 571.63(a) ("When an inmate's request is denied by the Warden, the inmate will receive written notice and a statement of reasons for the denial. The inmate may appeal the denial through the Administrative Remedy Procedure").

[33] *United States v. Hight*, 488 F. Supp. 3d 184, 187 (E.D. Pa. 2020). Within the last two years, at least eight circuits have explicitly held that the exhaustion requirement of § 3582(c)(1)(A) is non-jurisdictional. *See United States v. Muhammad*, No. 20-7520, 2021 WL 4888393, at *3 (4th Cir. Oct. 20, 2021) (finding that the administrative exhaustion requirement of 18 U.S.C. § 3582(c)(1)(A) "is a non-jurisdictional claim-processing rule" and citing to similar opinions in seven "sister circuits"—the Second, Fifth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits.)

[34] *Fort Bend County v. Davis*, 139 S. Ct. 1843, 1849 (2019) (holding that the administrative exhaustion requirement under Title VII is not jurisdictional, but a claim-processing rule subject to waiver or forfeiture).

[35] *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) (citing *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012)).

[36] *Fort Bend Cnty.*, 139 S. Ct. at 1849 (quoting *Eberhart v. United States*, 546 U.S. 12, 15, 19 (2005) (*per curiam*)).

[37] *Alam*, 960 F.3d at 833 (citing *Eberhart*, 546 U.S. at 19.); *see also Hamer v. Neighborhood Hous. Serv. of Chi.*, 138 S. Ct. 13, 17 (2017) ("If properly invoked, mandatory claim-processing rules must be enforced, but they may be waived or forfeited."); *Alam*, 960 F.3d at 834 (applying *Hamer* to analyze the "exhaustion" requirement of § 3582(c)(1)(A)).

[38] The Courts of Appeals have consistently held that the exhaustion requirement of § 3582(c)(1)(A) may be forfeited. *See United States v. Swindle*, No. 20-14711, 2021 WL 4944822, at *2 (11th Cir. Oct. 25, 2021) (citations omitted) ("Because [administrative exhaustion] is a claim-processing rule, it is a defense that the government can

consistent with applicable policy statements issued by the Sentencing Commission, supported by the traditional sentencing factors under 18 U.S.C. § 3553(a), and warranted by extraordinary and compelling reasons.

### B.  Supported by Traditional Sentencing Factors

Any sentence reduction granted under §3552 (c)(1)(A) must be supported by the applicable sentencing factors. The relevant § 3553(a) sentencing factors are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed--

---

forfeit. Because the government did not assert this defense before the District Court, the defense was forfeited."); *United States v. Saladino*, 7 F.4th 120, 121–22 (2d Cir. 2021) (finding that a district court could consider the merits of a motion for compassionate release where the government has withdrawn its initial "affirmative defense of exhaustion"); *United States v. Muhammad*, No. 20-7520, 2021 WL 4888393, at *3 (4th Cir. Oct. 20, 2021) (finding that [t]he district court . . . erred by *sua sponte* dismissing the motion [for compassionate release] based on the [administrative exhaustion] threshold requirement, even assuming Appellant had not completed the prerequisites to suit"); *United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020) (citations omitted) (holding that "[f]ailure to exhaust administrative remedies is an affirmative defense," and that the government waived such a defense on appeal by not invoking it); *United States v. Harris*, 989 F.3d 908, 911 (11th Cir. 2021) (finding that the requirement of administrative exhaustion was an affirmative defense that was waived when the government did not assert it on appeal).

Similarly, the Courts of Appeals have held that when the exhaustion issue is raised by the parties, it must be applied. *See United States v. Franco*, 973 F.3d 465, 468 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 920 (2020) (finding that the administrative exhaustion requirement was a "mandatory claim-processing rule" that barred a district court from considering a motion for compassionate release when both parties agreed in their filings before the district court that the exhaustion requirement had not been satisfied.); *Alam*, 960 F.3d at 834 (holding that the administrative exhaustion requirement, while not jurisdictional, was "mandatory" and required the district court to dismiss motions for compassionate release where "[t]he government timely objected to [the movant's] failure to exhaust at every available opportunity"); *United States v. Houck*, 2 F.4th 1082, 1084 (8th Cir. 2021) (finding that the administrative exhaustion requirement "must be enforced so long as the opposing party properly raises it," and holding that "because the Government raised the exhaustion issue and [the movant] failed to exhaust his administrative remedies prior to filing the motion, the district court was required to dismiss [the compassionate release] motion without prejudice."); *United States v. Ransom*, 859 F. App'x 58, 59 (9th Cir. 2021) (holding that "a district court may not reach the merits of a compassionate release motion if the government has properly objected in the district court to the defendant's failure to exhaust."); *United States v. Keller*, 2 F.4th 1278, 1282–83 (9th Cir. 2021) (same).

Although the Third Circuit has not explicitly held that the exhaustion requirement is a claim-processing rule that may be forfeited, in *United States v. Raia*, which affirmed the denial of a motion based on the failure to exhaust, the government had explicitly raised the issue in the Court of Appeals. *See United States v. Raia,* Appeal No. 18-657, Doc. No. 65 (3d Cir.); *accord In re Plavix Mktg., Sales Pracs. and Prods. Liab. Litig. (No. II)*, 974 F.3d 228, 232 (3d Cir. 2020) (holding that the first-to-file bar under the False Claims Act is not jurisdictional, because "[a]s the Supreme Court has recently instructed, unless Congress states clearly that a rule is jurisdictional, we will treat it as nonjurisdictional.") (first citing *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013); and then citing *Fort Bend Cnty.*, 139 S. Ct. at 1850).

> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> >
> > (B) to afford adequate deterrence to criminal conduct;
> >
> > (C) to protect the public from further crimes of the defendant; and
> >
> > . . . [and]
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.][39]

On December 18, 2020, this Court denied Mr. Fields's earlier application for compassionate release on medical grounds due to the ongoing COVID-19 pandemic. At that time, the Court found that "the § 3553(a) sentencing factors . . . weigh[ed] heavily against a sentence reduction," due to Mr. Fields's "multiple prior convictions, including those for the manufacture or distribution of crack cocaine" and his underlying arrest for possession of a firearm.[40] The government points to this determination in arguing that the sentencing factors do not support Mr. Fields's release.[41] Notably, the 180-month sentence imposed on Mr. Fields was the statutory minimum, well "below the guidelines range of 235-293 months."[42] In addition, Mr. Fields's prior convictions were for drug distribution, "crimes which invade distinct societal interests . . . by increasing lawlessness and violence."[43] These factors have not changed since the Court's last evaluation of Mr. Fields's status.

However, the Court must also consider whether ensuring that Mr. Fields serves the full sentence prescribed by statute for his crimes or modifying his term of incarceration so that he may participate actively in the custody proceedings concerning his daughter better serves three paramount goals: (1) providing a just punishment for his offense, (2) affording an adequate

---

[39] 18 U.S.C. § 3553(a).

[40] *See* Order Den. Mot. Compassionate Release [Doc. No. 133] at 5.

[41] Government's Resp. Opp'n [Doc. No. 144] at 2.

[42] Order Den. Mot. Compassionate Release [Doc. No. 133] at 5.

[43] *United States v. Amezquita-Machado*, 434 F. App'x 143, 146 (3d Cir. 2011).

deterrence to future criminal conduct by Mr. Fields and others, and (3) protecting the public from further crimes of Mr. Fields.

Mr. Fields argues that since his prior motion for compassionate release he has completed a significant portion of his remaining sentence, and that he is scheduled for release to a halfway house in less than five months.[44] The Court also notes Mr. Fields's good behavior during his twelve years of incarceration; the only disciplinary infraction of which the Court has been made aware occurred when, in 2018, Mr. Fields was found in possession of a cell phone.[45]

The nature of the proceedings is also relevant. Mr. Fields's earlier motion for compassionate release was filed in response to the ongoing COVID-19 pandemic, and the Court concluded that Mr. Fields overstated the specific risks that he faced from this serious disease.[46] Here, Mr. Fields's daughter is currently in foster care, and Mr. Fields cannot participate directly in the Juvenile Court proceedings. Mr. Fields's filings express a very reasonable fear that his daughter might be traumatized by her current living situation and that his ability to take custody of his daughter is prejudiced by his incarceration.[47] The background and procedural posture of this motion weigh in favor of a finding that Mr. Fields's concerns are genuine.[48] Mr. Fields filed the present motion for compassionate release only after the resolution of the issues surrounding his scheduled release and the warden's initial denial of his BOP petition, when Mr. Fields was certain that (1) his release date was imminent, (2) he would not be released to a halfway house in time to participate in his daughter's custody proceedings, and (3) his administrative request to

---

[44] Emergency Req. Compassionate Release [Doc. No. 143] at 7.

[45] Order Den. Mot. Compassionate Release [Doc. No. 133] at 5 n.32.

[46] Order Den. Mot. Compassionate Release [Doc. No. 133] at 4.

[47] Cumulative Traverse Resp. [Doc. No. 146] at 2–6.

[48] The Court reserves discussion about whether these concerns, as asserted, are "extraordinary and compelling" for Section III.C below.

10

the BOP for compassionate release was unlikely to be successful. Nothing before the Court suggests any dilatory behavior, opportunistic filing, or other disrespect for the rule of law.

While the crimes Mr. Fields committed are serious, he has served more than a decade in prison for those crimes. He will soon be released, in part due to the rehabilitation and good behavior he has shown during his incarceration. In denying Mr. Fields's previous motion for compassionate release, the Court at that time concluded that Mr. Fields "pose[d] a risk to the community."[49] Here, where Mr. Fields is scheduled for imminent release and where the grounds for compassionate release are genuine, the relevant question is whether Mr. Fields poses less risk to the community if he remains incarcerated for an additional five months or if he is released to participate in the current custody proceedings. The Court concludes that the community is unlikely to be endangered if Mr. Fields is released slightly early, as the custody proceedings provide a powerful incentive for Mr. Fields to avoid activity that would jeopardize his right to participate.

### C. Extraordinary or Compelling Reasons

Mr. Fields claims that the inability of T.F.'s mother to care for T.F. presents an "extraordinary or compelling" reason for the Court to modify the terms of his incarceration so that he can participate in custody proceedings.[50] The government argues that Mr. Fields's "situation, while very sad, does not justify compassionate release," and notes that "[i]t is not unusual that a parent cannot be involved in child custody matters due to incarceration."[51]

---

[49] Order Den. Mot. Compassionate Release [Doc. No. 133] at 5.

[50] Emergency Req. Compassionate Release [Doc. No. 143]; *see also* Cumulative Traverse Resp. [Doc. No. 146].

[51] Government's Resp. Opp'n [Doc. No. 144] at 2.

As discussed above, District Courts may "consult . . . the [Sentencing Commission's] policy statement to form a working definition of 'extraordinary and compelling reasons.'"[52] "For guidance on what constitutes 'incapacitation,'" courts often "look to the BOP's non-binding Program Statement for processing compassionate release requests."[53] The BOP's Program Statement requires prisoners to submit certain evidence supporting any request for compassionate release based on the "death or incapacitation of a family member caregiver."[54] While some of this evidence relates to medical details that are clearly inapplicable to the "legal incapacitation" argument brought by Mr. Fields,[55] the BOP also requires:

(1) A statement describing the caregiver's incapacitation;

(2) A statement indicating "that this person was the only family member capable of caring for the inmate's child;" along with letters or documentation to that effect;

(3) "Verifiable documentation that the inmate is the parent of the child;"

(4) "Verifiable documentation providing the name and age of the child;"

(5) "A clear statement and documentation that the inmate has a release plan, including housing, and the financial means to care for the child immediately upon the inmate's release;"

(6) "A general description of the child's physical and mental condition;" and

---

[52] *Andrews*, 12 F.4th at 260.

[53] *United States v. White*, No. 16-40, 2021 WL 1721016, at *4 (E.D. La. Apr. 30, 2021).

[54] U.S. Dep't of Just., Bureau of Prisons, No. 5050.50, Program Statement 7–9 (2019), https://www.bop.gov/policy/progstat/5050_050_EN.pdf.

[55] For example, the requirement that a prisoner provide death certificates or verifiable medical documentation of incapacitation.

(7) "If the child is in foster care, documentation verifying that the inmate will be able to immediately obtain custody of the child."[56]

In addition, the BOP examines certain details of the inmate's history and legal status, including whether there is any documented history of a relationship with the child before or during incarceration, whether the inmate's parental rights over this child or any child have been terminated, and whether there is any evidence of child abuse or neglect in the inmate's criminal record.[57]

Where a movant seeks compassionate release because their child has been removed from the custodial parent either due to abuse or neglect or due to the custodial parent's incarceration, courts have articulated a number of factors relevant to compassionate release.[58] However, these factors are far from a strict test, and determinations are ultimately individual assessments based on the specific facts before each court.[59] If a movant is the only available alternative caregiver and the applicable sentencing factors do not weigh against release, it may be unreasonable for a court *not* to find an extraordinary circumstance that warrants compassionate release.[60] However,

---

[56] U.S. Dep't of Just., Bureau of Prisons, No. 5050.50, Program Statement 7–9 (2019), https://www.bop.gov/policy/progstat/5050_050_EN.pdf.

[57] *Id*. at 8–9.

[58] *See United States v. Johnson*, No. 15-00059, 2020 WL 6075867, at *5 (E.D. Cal. Oct. 15, 2020) (assessing whether the "governing authorities" were likely to find that the defendant was a "suitable caretaker," and looking at whether the defendant had demonstrated that he was legally entitled to custody of the children); *United States v. Paul*, No. 18-00227, 2020 WL 5807343, at *2 (S.D. W. Va. Sept. 25, 2020) (assessing whether the defendant had demonstrated that he was legally entitled to custody of the children, as well as whether the Defendant had a "residence for the children to live in"); *United States v. Ramos*, No. 12-4101, 2021 WL 4507464, at *5 (N.D. Iowa Oct. 1, 2021) (finding that a motion for compassionate release can be "impacted, if not altogether defeated," by a showing that the movant's parental rights have been terminated); *United States v. McMurray*, 12-00360, 2021 WL 4473403, at *2 (D. Or. Sept. 29, 2021) (assessing the nature of the relationship between a defendant and their child, along with the stability of the child's current living situation).

[59] *See United States v. White*, No. 16-40, 2021 WL 1721016, at *5 (E.D. La. Apr. 30, 2021); *United States v. Montgomery*, No. 17-082, 2020 WL 6491653, at *2 (E.D. Ky. Nov. 4, 2020); *United States v. Greer*, No. 17-94(1), 2021 WL 2651089, at *4 (E.D. Tex. June 28, 2021); *United States v. Johnson*, No. 15-00059, 2020 WL 6075867, at *5 (E.D. Cal. Oct. 15, 2020).

[60] *See United States v. Laureti*, 859 F. App'x 490, 491 (11th Cir. 2021) (noting that if a movant "[met] his burden" of showing that "he was the only available alternative caregiver" when an existing caregiver was rendered incapable

a movant need not meet that standard to establish that release is warranted. Instead, a court must examine all of the relevant aspects of each particular case.

Here, Mr. Fields has provided verifiable documentation from the Juvenile Court showing (1) T.F.'s name and age; (2) Mr. Fields's parentage of T.F.; (3) T.F.'s current living conditions, including some details of her physical and mental status; and (4) the participation of Mr. Fields, through counsel, in T.F.'s ongoing status hearings.[61]

The government argues that Mr. Fields "makes no showing that he is the only available caregiver for the child, as would be required at minimum to justify compassionate release."[62] Mr. Fields points to the documentation he submitted describing DHS's custody investigation and the proceedings before the Juvenile Court, and argues that it indicates that there is no other available caregiver, and that the submitted correspondence with the case manager shows that the case manager is "directly assisting [Mr. Fields] with a child-parent reunification plan."[63] While Mr. Fields has provided no evidence that he would receive custody in the event of his release, the DHS recommendation that T.F. be placed in foster care was based on a finding that "[i]n-home services will not reasonably eliminate the risk of harm to [T.F.], because . . . [Mr. Fields] is incarcerated."[64]

The government argues that Mr. Fields "has never had custody of or responsibility for his daughter" because she was born less than two months before he was incarcerated.[65] In response,

---

of providing such care, it could be "unreasonable *not* to find an extraordinary circumstance warranting compassionate release") (emphasis added).

[61] Emergency Req. Compassionate Release [Doc. No. 143] at 10–16, 27, 29.

[62] Government's Resp. Opp'n [Doc. No. 144] at 3. In making this argument the government points to the Sentencing Commission's guidance, which this Court notes is only binding with respect to motions initiated by the BOP.

[63] Cumulative Traverse Resp. [Doc. No. 146] at 4.

[64] Emergency Req. Compassionate Release [Doc. No. 143] at 16.

[65] Government's Resp. Opp'n [Doc. No. 144] at 2–3.

Mr. Fields argues forcefully that he feels "fatherly love" towards T.F.,[66] and the Court notes that the Juvenile Court authorized telephone contact between T.F. and Mr. Fields in its initial shelter care hearing, which points to an existing relationship between father and daughter.[67] The Court will not conclude that the fact that Mr. Fields has been imprisoned for most of his daughter's life constitutes an abdication of his parental rights.

Finally, Mr. Fields has not clearly established that he has any ability to care for T.F. materially, and he has not submitted a post-release plan detailing where he plans to live or work if released. The Court notes that Mr. Fields submitted such a plan in support of his 2020 motion for compassionate release, which indicated that he planned to live with his sister and work at his father's home remodeling and repair business.[68] However, this plan was submitted more than a year ago, and was never supported by any external documentation from his sister or father confirming that they would provide such assistance.

Reviewing the record before this Court, and taking into consideration the policy statements of the Sentencing Commission, the practices of the BOP, and the practices of other district courts exercising their discretion in similar cases, this Court finds that Mr. Fields presents extraordinary and compelling reasons why his sentence should be reduced.

This determination is not based on any finding that Mr. Fields will succeed in gaining full custody of his daughter. In some instances, it may be clear that the defendant is the only caregiver available for their child. However, in a case such as this one where legal incapacitation of a previous caregiver has resulted in ongoing removal proceedings and the defendants seeks compassionate release to participate in those proceedings, any placement determination will

---

[66] Cumulative Traverse Resp. [Doc. No. 146] at 5.

[67] Emergency Req. Compassionate Release [Doc. No. 143] at 15.

[68] Mot. Compassionate Release [Doc. No. 125] at 25.

necessarily be based on factors outside of the scope of this motion. The Court strongly weighs the fact that even if the motion for compassionate release were denied, Mr. Fields would be released within a few months. However, those few months could prove critical to the custody determinations, and Mr. Fields has a compelling interest in participating in these proceedings even if the resulting placement arrangements ordered by the Juvenile Court do not result in Mr. Fields obtaining custody of his daughter. This Court will not presume to decide what is in the best interests of Mr. Fields's daughter; the law properly places that determination in the hands of the Juvenile Court. Because this Court cannot make such a determination, an assurance of custody cannot be the only basis for compassionate release where the caregiver of a defendant's minor children suffers *legal* incapacitation.

Instead, the question before this Court is whether the circumstances present an extraordinary and compelling reason for the modification of Mr. Fields's sentence. Here, Mr. Fields seeks compassionate release to participate in ongoing removal proceedings in Juvenile Court and to strengthen his legal and material capacity to care for his daughter. He argues that the alleged abuse of his daughter by her previous caregiver, her current temporary placement in a foster care facility, and the active status of her Juvenile Court case present extraordinary and compelling reasons to reduce his sentence so that he can assert his right to support and care for his daughter. This Court agrees.

### IV.   ORDER

For the reasons set forth herein, it is **ORDERED** that defendant's Mr. Fields' Emergency Request for Compassionate Release [Doc. No. 143] is **GRANTED**, his Motion Requesting Judicial Recommendation [Doc. No. 140] is **DISMISSED AS MOOT**, and his term of imprisonment is reduced to time served, except as set forth in the next paragraph.

**IT IS FURTHER ORDERED** that the defendant shall be released from the custody of the Bureau of Prisons as soon as his release plan is implemented, travel arrangements can be made, and he completes a 14-day quarantine at FCI Allenwood Low (unless, in the BOP's determination, this is not necessary because Mr. Fields has been vaccinated for COVID-19, is duplicative because he has already been effectively quarantined, or is not practical in light of the institution's resources; if quarantine is deemed impractical due to resource constraints, the defendant shall self-quarantine after his release for 14 days at a residence approved by the Probation Office).

**IT IS FURTHER ORDERED** that the defendant shall still serve the previously imposed five-year period of supervised release under the conditions of supervised release previously imposed by the Court at sentencing.

**IT IS FURTHER ORDERED** that the Probation Office shall notify the Court if a release plan cannot be implemented by the time that the Bureau of Prisons is prepared to release the defendant pursuant to this order.

It is so **ORDERED** this 3rd day of November 2021.

                                                  **BY THE COURT:**

                                                  /s/ Cynthia M. Rufe

                                                  _____
                                                  **CYNTHIA M. RUFE, J.**